IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

MARSHUN STEWART, PETITIONER

v. No. 2:09CR157-MPM-DAS

UNITED STATES OF AMERICA RESPONDENTS

**MEMORANDUM OPINION**

This matter comes before the court on the motion of Marshun Stewart to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The government has responded to the motion, Stewart has replied, and the matter is ripe for resolution. For the reasons set forth below, the instant motion to vacate, set aside, or correct sentence will be denied.

*Habeas Corpus* **Relief Under 28 U.S.C. § 2255**

The writ of *habeas corpus*, a challenge to the legal authority under which a person may be detained, is ancient. Duker, The English Origins of the Writ of Habeas Corpus: A Peculiar Path to Fame, 53 N.Y.U.L.Rev. 983 (1978); Glass, Historical Aspects of Habeas Corpus, 9 St. John's L.Rev. 55 (1934). It is "perhaps the most important writ known to the constitutional law of England," *Secretary of State for Home Affairs v. O'Brien*, A.C. 603, 609 (1923), and it is equally significant in the United States. Article I, § 9, of the Constitution ensures that the right of the writ of *habeas corpus* shall not be suspended, except when, in the case of rebellion or invasion, public safety may require it. *Habeas Corpus*, 20 Fed. Prac. & Proc. Deskbook § 56. Its use by the federal courts was authorized in Section 14 of the Judiciary Act of 1789. *Habeas corpus* principles developed over time in both English and American common law have since been codified:

The statutory provisions on *habeas corpus* appear as sections 2241 to 2255 of the

1948 Judicial Code. The recodification of that year set out important procedural limitations and additional procedural changes were added in 1966. The scope of the writ, insofar as the statutory language is concerned, remained essentially the same, however, until 1996, when Congress enacted the Antiterrorism and Effective Death Penalty Act, placing severe restrictions on the issuance of the writ for state prisoners and setting out special, new *habeas corpus* procedures for capital cases. The changes made by the 1996 legislation are the end product of decades of debate about *habeas corpus*.

*Id.*

## Section 2255 Proceedings

Section 28 U.S.C. § 2255 permits an inmate serving a sentence after conviction of a federal crime "to move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). As with the writ of *habeas corpus*, *see* 28 U.S.C. §§ 2241, 2254, a § 2255 motion sets forth only four bases on which a motion may be made: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Thus, a prisoner must claim either a constitutional violation or want of subject matter jurisdiction to invoke 28 U.S.C. § 2255. In the absence of constitutional or jurisdictional defects, a federal prisoner may invoke § 2255 only if the error constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio,* 442 U.S. 178, 185 (1979).

The district court must first conduct a preliminary review of a section 2255 motion, and "[i]f it plainly appears from the motion, any attached exhibits, and the record of the prior proceeding that the moving party is not entitled to relief, the judge must dismiss the motion." Rules Governing Section 2255 Proceedings, Rule 4(b). If the motion raises a non-frivolous claim to relief, the court must order the Government to file a response or to take other appropriate action. *Id.* The judge may then require

the parties to expand the record as necessary and, if good cause is shown, authorize limited discovery. *Rules Governing Section 2255 Proceedings,* Rules 6–7.

After reviewing the government's answer, any transcripts and records of prior proceedings, and any supplementary materials submitted by the parties, the court must decide whether an evidentiary hearing is warranted. *Rules Governing Section 2255 Proceedings,* Rule 8. Under the statute, an evidentiary hearing must be held unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). However, the court need not hold an evidentiary hearing if the prisoner fails to produce "independent indicia of the likely merit of [his] allegations." *United States v. Edwards,* 442 F.3d 258, 264 (5th Cir. 2006) (quoting *United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir. 1998)).

Ultimately, the petitioner bears the burden of establishing his claims of error by a preponderance of the evidence. *See Wright v. United States,* 624 F.2d 557, 558 (5th Cir. 1980). For certain "structural" errors, relief follows automatically once the error is proved. *See Burgess v. Dretke,* 350 F.3d 461, 472 (5th Cir. 2003). For other errors at the trial court level, the court may grant relief only if the error "had substantial and injurious effect or influence" in determining the outcome of the case. *Brecht v. Abrahmson,* 507 U.S. 619, 637 (1993); *see also United States v. Chavez,* 193 F.3d 375, 379 (5th Cir. 1999) (applying *Brecht's* harmless error standard in a § 2255 proceeding). If the court finds that the prisoner is entitled to relief, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

**Facts and Procedural Posture**

Marshun Stewart committed a series of rapes in Coahoma County, Mississippi, in the early 1980s, and was convicted of those crimes in 1983. After his release in 2008, he crossed state lines, traveling to the state of Washington to live, without updating his sex offender registration in Mississippi or registering in the state of Washington. He was indicted for a violation of the Sex Offender Registration and Notification Act (SORNA), and in 2010, was convicted and sentenced in the Northern District of Mississippi to 60 months incarceration followed by 15 years post-release supervision. Doc. 55.

After Stewart's release from active custody, a petition to revoke supervised release was filed by the U.S. Probation Service on a Grade A Level violation of law referencing his indictment as a habitual offender for violation of the State of Mississippi sex offender registration statute. A Grade B violation was also alleged involving a State arrest for stalking a 16-year-old girl.

Stewart admitted the allegations at the revocation hearing. The court sentenced him to a term of 24 months incarceration, and the judgment was entered on October 26, 2016. Doc. 102. Stewart did not appeal; instead, he filed a 28 U.S.C. § 2255 motion. Doc. 103. He later filed a motion seeking to amend his motion. Doc. 107. He filed a petition for a writ of mandamus with the Fifth Circuit Court of Appeals, which denied the petition. The government has responded to Stewart's motion, and the matter is ripe for resolution. Doc. 115.

**Issues**

**Issue No. 1:** (A) The court sentenced Stewart for the seriousness of the underlying conduct supporting the violations, rather than simply for the revocation itself, (B) The court relied solely on the indictment and arrest with inadequate proof of the allegations, (C) The government had promised to recommend a 12-month sentence, but did not do so, and (D)

Stewart's most serious infraction was a Grade B violation, not a Grade A violation as the court found.

**Issue No. 2:** Counsel provided ineffective assistance because she failed to object at the revocation hearing, "refuse[d] to research revocation laws statute[s]," and refused to submit the petitioner's sex offender guidelines.

> **Issue One: (A) Whether the court improperly sentenced Stewart based solely on underlying conduct; (B) Whether the court relied solely upon the indictment and arrest for the violation; (C) Whether the government followed through with a recommendation of a 12-month sentence; and (D) Whether the most serious violation was Grade B, not Grade A**

**(A) Seriousness of the Underlying Offense During Revocation, (B) Reliance Solely Upon the Indictment and Arrest for the Violation, and (D) The Grade of the Violation**

A district court may not "rely upon the seriousness of the offense and the need for just punishment when sentencing a defendant for violation of the conditions of his supervised release." *United Sates v. Rivera*, 784 F.3d 1012, 1017 (5th Cir. 2015). The court, in reaching that holding, observed that Congress' decision to exclude the "seriousness of the offense" from consideration in a district court's decision to revoke supervised release "may be counterintuitive." *Id*.

While the revocation and sentence cannot turn *solely* on consideration of the "seriousness of the offense," the reason the exclusion of that factor is "counterintuitive" is that the other factors expressly set forth in § 3583 indeed contemplate the seriousness of the supervised release violation. *See* 18 U.S.C. § 3583(e) (district courts must consider the factors set forth in, *inter alia,* 18 U.S.C. § 3553(a)(l) and 18 U.S.C. § 3553(a)(2)(B) and (C) in determining the appropriate sanction for a violation of supervised release). The factor in 18 U.S.C. § 3553(a)(l) is "the nature and circumstances of the offense and the history and characteristics of the defendant.") The factors in 18 U.S.C. § 3553(a)(2)(B)-(C) are "the need for the sentence imposed – (B) to afford adequate deterrence to

criminal conduct; [and] (C) to protect the public from further crimes of the defendant.") These factors clearly require the court to consider, in part, the seriousness of the underlying offense.

Further, the policy statements regarding supervised release in the *United States Sentencing Guidelines Manual* also involve judging the seriousness of the conduct constituting a violation of the conditions of supervised release. The Guidelines begin by classifying supervised release violations into Grade A, B, or C. U.S.S.G. § 7Bl.l(a). Grade A violations are those involving felonies that are crimes of violence, controlled substance offenses, involve firearms or "destructive device[s]," or felonies punishable by more than twenty years in prison. U.S.S.G. § 7Bl.l(a)(l). Grade B violations are all other felonies. U.S.S.G. § 7Bl.l(a)(2). Grade C violations are misdemeanors and all other supervised release violations. U.S.S.G. § 7Bl.l(a)(3). The Grade of the supervised release violation, *in combination with the defendant's criminal history category*, determines the Guidelines sentencing range in the "Revocation Table." U.S.S.G. § 7Bl.4. Obviously, the Grade of the violation is directly related to its seriousness.

In the present case, Marshun Stewart was charged with an offense that carried over 20 years as a punishment (an indictment for violation of the state sex offender registration law as a habitual offender, which carries a sentence up to life in prison) – which constitutes a Grade A Level violation of his supervised release. He also faced the allegation of a secondary Grade B Level violation stemming from charges for aggravated stalking of a 16-year-old girl. As Mr. Stewart admitted the allegations in open court, there was no need to put additional proof of the violation before the court. Doc. 111 at 5-6. The sentence on the violation did not turn on the court's analysis of the "seriousness of the offense," but on permissible factors, such as the danger Mr. Stewart might pose to the public. *Id*.

The court looked at Mr. Stewart's lengthy and disturbing criminal history and explained why 24 months was the correct sentence:

> [I]t is incumbent on this Court to seriously take into consideration the history and characteristics of each defendant who comes before this Court. And, based on your history and characteristics, I think it's clear that you are a potential threat to the community; and one of the deepest of responsibilities of the court system is to protect the public.

Transcript of Revocation Hearing, Doc. 111 at 15-16. The court heard from the petitioner in mitigation, then relied on permissible factors to impose a sentence fashioned to address those concerns. This claim for relief is without substantive merit.

**(C) The Recommendation of a 12-month Sentence**

Mr. Stewart's claim that he had been offered a sentence of twelve months is simply not supported in the record. He attached, as proof of such an offer, an unsigned Agreed Order. Neither the parties nor the court signed the order; thus, it has no effect. Mr. Stewart is, in essence, attempting to enforce a plea agreement that was never executed. This argument is without substantive merit.

> **Issue Two: Whether counsel provided ineffective assistance by failing to object at the revocation hearing, "refus[ing] to research revocation laws statute[s]," and refusing to submit the petitioner's sex offender guidelines.**

The court must address claims of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prove that defense counsel was ineffective, the petitioner must show that counsel's performance was deficient and that the deficiency resulted in prejudice to her defense. Under the deficiency prong of the test, the petitioner must show that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. The court must analyze counsel's actions based upon the circumstances at the time – and must not use the crystal clarity of hindsight. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988). The petitioner "must overcome the

presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). To prove prejudice, the petitioner must demonstrate that the result of the proceedings would have been different or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995), *cert. denied*, 116 S.Ct. 557 (1995); *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *Sharp v. Johnson*, 107 F.3d 282, 286 n.9 (5th Cir. 1997). "When §2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011); *Premo v. Moore*, 131 S.Ct. 733 (2011). The court must use the *Strickland* standard when analyzing guilty plea challenges based on ineffective assistance of counsel.[1] *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004). Bare allegations are insufficient to sustain a request for *habeas corpus* relief:

> [C]onclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal *habeas* proceeding. *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983). "In the absence of a specific showing of how these alleged errors and omissions were constitutionally deficient, and how they prejudiced his right to a fair trial we [can find] no merit to these [claims]." *Barnard v. Collins*, 958 F.2d 634, 642 (5th Cir. 1992).

*Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000).

Mr. Stewart argues that counsel should have advised him not to admit the violations of his post-release supervision. Stewart has not, however, stated what might have happened if he had put the

---

[1] A challenge to a guilty plea is analogous to a confessed revocation.

government to its proof. Near the end of the hearing, the government stated what proof it had available:

> If he had not admitted [the violations], we've got a number of witnesses in the back room there from that community who would testify – in fact , one of the deputies with the Coahoma County Sheriff's Department lives in that neighborhood and would be testifying that the defendant wasn't just visiting at [a woman's] house; but, during stretches, he was absolutely living there.

Doc. 111 at 13. The testimony from the concerned citizens of Mr. Stewart's neighborhood would most likely have done more harm than good to his cause, and counsel's decision to concede the violations falls well within the realm of sound trial strategy.

Further, Mr. Stewart has not shown that, had he insisted that the government prove the violations, the court would have found that he did not violate the terms of his supervised release – or at least would have imposed a lesser sentence. Stewart also failed to specify what research counsel failed to conduct or what objections counsel should have raised during the revocation hearing. Again, general unsupported allegations do not rise to the level of valid *habeas corpus* claims. *See Miller, supra.* Stewart also completely fails to show that there is a reasonable probability that, but for the alleged errors, the result of the proceeding would have been different. Put simply, Marshun Stewart repeatedly violated the terms of his supervised release and admitted so before this court. Had he not admitted the violations, the government stood ready to prove them. There were no valid objections counsel could have made to prevent the court from receiving the proof – whether from Mr. Stewart himself or from the government. As such, he has shown no prejudice to his legal position based upon his attorney's performance. Counsel's advice to admit the allegations was sound.

### An Evidentiary Hearing Is Not Warranted

If the § 2255 motion is not summarily dismissed, "the judge must review the answer, any transcripts and records of prior proceedings, and any materials submitted under Rule 7

[Expanding the Record] to determine whether an evidentiary hearing is warranted." Rule 8(a), Rules Governing Section 2255 Proceedings for the United States District Courts. Under the Anti-Terrorism and Effective Death Penalty Act, ("AEDPA"), a court may decide a motion to vacate, set aside, or correct sentence "without requiring the production of the prisoner at [a] hearing." 28 U.S.C. § 2255(c). Indeed, a full and fair hearing does not necessarily require live testimony; a "paper hearing" can be sufficient to afford a petitioner a full and fair opportunity to present factual issues pertinent to his case. *Perillo v. Johnson*, 79 F.3d 441, 444 (5th Cir. 1996) (applied to a *habeas corpus* petition under 28 U.S.C. § 2254). The court has reviewed the file and records of this case, has applied the analysis above, and has not encountered any claims the movant raises requiring an evidentiary hearing. As such, Mr. Stewart's request for a hearing will be denied.

## Conclusion

In sum, none of Mr. Stewart's arguments has merit, and the instant motion to vacate, set aside, or correct sentence will be denied. In addition, Mr. Stewart's request for an evidentiary hearing will be denied. Finally, in light of this ruling, any motions currently pending in this matter will be dismissed as moot. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 16th day of May, 2019.

**/s/ MICHAEL P. MILLS**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**